CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29000.)

NEW YORK TELEPHONE COMPANY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29001.)

BROOKLYN UNION GAS COMPANY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29002.)

Court of Claims, February 21, 1949.

*Jacob H. Goetz* and *Henry S. Reeder* for Consolidated Edison Company of New York, Inc., claimant.

*Ralph W. Brown* and *Bleakley, Platt, Gilchrist & Walker* for New York Telephone Company, claimant.

*Jackson A. Dykman* and *Edwin F. Russell* for Brooklyn Union Gas Company, claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Philip A. Paulson* of counsel), for defendant.

RYAN, J. The Attorney-General has moved to dismiss each of the above-entitled claims pursuant to rule 106 of the Rules of Civil Practice upon the ground that it appears on the face thereof that the claim does not state facts sufficient to constitute a cause of action. The motions were all returnable at the same time and as the cases are substantially similar, we shall consider them together.

Each claim arose out of transit commission case No. 2711 which provided for the elimination of grade crossings on the Atlantic Avenue Division of the Long Island Rail Road Company between East New York, borough of Brooklyn, and Jamaica, borough of Queens. Each claim was filed pursuant to section 7 of chapter 677 of the Laws of 1928. Each claimant had a franchise to maintain its public utility services in Atlantic Avenue. Each claimant seeks to recover the expenses it incurred in relocating, rearranging and maintaining its facilities made necessary by the installation of temporary railroad tracks of the Long Island Rail Road Company and by the construction of emergency exits and stations for the completed railroad tunnel. The lines of Consolidated Edison Company and of Brooklyn Union Gas Company, for which damages are claimed, were in Atlantic Avenue, parallel to but outside of the railroad right of way. These two claimants make no claim for damages to lines in streets intersecting Atlantic Avenue. The New York Telephone Company, too, had lines in Atlantic Avenue parallel to and outside of the railroad right of way for the " maintenance, alteration and restoration " of which it seeks damages. But it appears from its pleading that some of its lines were within the railroad right of way in areas adjacent to streets which prior to the elimination proceeding terminated at the northerly and southerly sides of Atlantic Avenue (Schedule " A ") and that other

lines for which it makes claim, were in intersecting streets (Schedule " B ").

Claimants may recover against the State of New York in the first instance only if there was a liability to them already existing in law. (*Mirro* v. *State of New York,* 172 Misc. 963, affd. 260 App. Div. 525, affd. 285 N. Y. 678.) The liability, if it existed, was not increased or diminished by the amendment to section 14 of article VII of the Constitution, effective January 1, 1939, nor by the enactment of chapter 289 of the Laws of 1939, and claimants are not entitled to recover their disbursements as for incidental improvements. (*Western New York Water Co.* v. *Brandt,* 259 App. Div. 11, reargument denied 259 App. Div. 764, appeal dismissed 283 N. Y. 686; *Matter of Town of Cheektowaga Grade Crossing,* 259 App. Div. 141 [Judge Dowling's dissent 259 App. Div. 142], affd. 283 N. Y. 687.)

Claimants assert that legal liability did exist in that the relocations were made for the benefit of the railroad and that merely to accommodate another public service corporation their structures might not be disturbed without compensation. (*Los Angeles* v. *Los Angeles Gas & Electric Corp.,* 251 U. S. 32, 40; *New York & Queens Electric Light & Power Co.* v. *City of New York,* 221 App. Div. 544.) They assert further that the imposition of the temporary tracks upon the situs of their utility lines was a " trespass without mitigation " for which the Long Island Rail Road, were it not for the statute making the State of New York liable in the first instance, would be directly liable to them just as a railroad was held liable to an abutting property owner in *Lewis* v. *New York & Harlem R. R. Co.* (162 N. Y. 202). (See also *Sander* v. *State of New York,* 182 N. Y. 400.)

The Attorney-General invokes the " common-law rule " enunciated in the so-called *Bell Avenue* case wherein Judge Crane stated: " Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge." (*Transit Comm.* v. *Long Island R. R. Co.,* 253 N. Y. 345, 351.) We followed this rule in *Tilton* v. *State of New York* (171 Misc. 391, affd. 259 App. Div. 507, affd. 285 N. Y. 601) and it was likewise adhered to in *Public Service Comm, State of N. Y.,* v. *City of New York* (268 App. Div. 121, affd. 294 N. Y. 951) which concerned this same Atlantic Avenue project. In all of these cases the utility disturbed (gas mains in Bell Avenue, Bayside; street car tracks in James and North Salina Streets, Syracuse; duct lines, trolley tracks and an elevated structure in Brooklyn and Queens) was

in a street which intersected the railroad involved and was directly in the path of the improvement. To eliminate the crossing at grade it was necessary that the obstacle be removed and relocated. Similarly, in the Cheektowaga case the sixteen-inch water main of the Western New York Water Company was four feet below grade and within the bed of Union Road which was depressed to a maximum of twenty-one feet to pass under the railroad. In another and more recent case the New York City tunnel authority brought an action to recover from certain utility companies the expenses the plaintiff had incurred in relocating the defendants' facilities. These had been maintained both above and below the surface of certain public streets within the area of the approaches to plaintiff's tunnel. The grades of some of these streets were changed. The lines of others were altered. The Court of Appeals held that the plaintiff was exercising a governmental, not a proprietary function and applied the *Bell Avenue* rule. (*New York City Tunnel Authority* v. *Consolidated Edison Co.,* 295 N. Y. 467.)

Here the facts are different. With the possible exception of two items in New York Telephone's claim, which we have noted, these claimants seek to recover the expenses they incurred in relocating, altering and maintaining lines and structures not in the direct path of the improvement. They assert that to do away with the street crossings at grade it was not necessary that these lines and structures be disturbed. The work was done in accordance with the "modified enlarged plan" of the transit commission. This plan provided for the depression of the Long Island's tracks below street level for the entire length of the Atlantic Avenue division and for the construction above them of an improved highway. The Attorney-General argues that the tunnel wherein the railroad was placed, the highway above it, the temporary tracks, the permanent emergency exits and stations, were all part of an integral improvement undertaken and executed by the State of New York wholly in the public interest and in no respect for the benefit of the Long Island Rail Road Company, except perhaps for its temporary advantage.

In support of his position the Attorney-General cites *Coffey* v. *State of New York* (291 N. Y. 494, 497) and quotes Judge DESMOND to the effect that "it cannot be doubted that this track relocation was a part of the project for the elimination of the crossing at grade." But it is pertinent to point out that what was decided in the *Coffey* case (*supra*) was that abutting property owners could not recover for a temporary diminution in rental value of their property due to a "partial loss of access

and resulting inconvenience * * * caused by the erection of a grade crossing elimination structure in the adjacent street." There was no physical disturbance of the Coffey property and no trespass. That decision was based upon the rule of *damnum absque injuria* as is apparent from the authorities cited and relied upon. To apply it here in an extension and enlargement of the *Bell Avenue* doctrine, for that is what the Attorney-General would have us do, is not warranted.

It seems to us that the placing of the temporary tracks and the construction of the emergency exits and stations in the locations already occupied by the utilities were acts severable from the elimination of the grade crossings. Such arrangements were opportune, perhaps desirable, but they were not essential. They did not constitute an ordinary street use in which these claimants were obliged to acquiesce without compensation. In a comparable situation, where the City of New York improved Fourth Avenue by removing a mall and old stairway entrances to its subway and by repaving the street, the Court of Appeals, finding that these changes " did not necessitate relocation of the defendant's underground structures ", held that the city could not recover the cost of such relocation. Judge RIPPEY, writing for a unanimous court, recognized the *Bell Avenue* rule but did not apply it. (*City of New York* v. *New York Telephone Co.*, 278 N. Y. 9, 13.)

To grant these motions would be to hold, as a matter of law, that the relocations and alterations which these claimants, respectively, were required to make were made solely in obedience to a police measure adopted for the protection of the public. The motions are denied.

Enter orders accordingly.